Here, here, Ms. Branson, the Appellate Court of the State of Illinois is now in session. Thank you very much. Please be seated, ladies and gentlemen. And welcome to all of you to the Appellate Court of the State of Illinois. As just a beginning comment, I want to say that we are delighted today. This is Judge Dismikov's first oral argument. So happy to have her with us and looking forward to working with her. We have two cases on the call today. The first case, let's call the case. And I want the lawyers just to identify themselves for the record when the case is called. Just stand at your place. 1550K, consolidated 152560, State of Illinois, Beeler, Schad & Diamond, P.C. v. Relax the Back Corporation. Thank you. The attorneys, identify themselves for the record at their place, please. Hi, good morning, Your Honor. Daniel Connechton and Kate O'Brien on behalf of Appellants & Relax the Back. Thank you, sir. Good morning, Your Honor. Steve Diamond on behalf of the relator. Very good. Suffice it to say, we have read your briefs still, little ladies, and we're very acquainted with the facts and the law in the case. We've also read the brief of the amicus brief that we received as well, so don't worry about that. So you don't have to believe the facts, certainly, when you're coming up to make your argument. Get to your most important arguments first, if you like. We're very liberal on time, so we usually do 15, 15, and then 5 at the end for rebuttal, if you wish to rebut. So, again, we're not clock watchers, but be aware we're not going to go any longer than that, probably. Are we ready to begin, then? Yes, Your Honor. All right. Counsel, do you want to proceed? May it please the Court. Daniel Connechton on behalf of Appellants & Relax the Back. I would like to reserve five minutes of my time for rebuttal. Fine. When I was trying to explain to my seven-year-old son what was so important about this hearing today and about this case, what I said was that Relax the Back is accused of lying. It never said anything that was untrue. Instead, it did the best it could to understand what the truth was. And the truth is no one really knows what the correct answer is in this case with respect to the underlying statements at issue. And I think that's right. The rule of law at issue in this appeal is enormously important to Relax the Back and many other out-of-state retailers because the Circuit Court imposed liability under an anti-fraud statute without any evidence of a false statement, without any evidence of required signature, And despite that, legal scholars can continue to debate whether or not Relax the Back had an obligation to collect the tax that's at issue. Relax the Back is a California-based business with about 25 employees. It had no physical presence in Illinois at the relevant time. It made a good-faith investigation that the Circuit Court credited. And no one informed Relax the Back that it was obligated to collect use tax. Counsel, the relator brings its cause of action under the False Claims Act, is that right? That's correct, Your Honor. And whose burden is it to prove and what's the burden to prove? The relator has the burden in this case to prove its case under the False Claims Act. And the relator must establish that Relax the Back knowingly makes uses or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state. So when you say knowingly, does that include reckless disregard? The term is defined under the statute, and it does include reckless disregard. But that's a very important requirement of the statute because it distinguishes it from tax law, which is something that the amica brief addresses in great detail as to something that is not under the purview of the court's jurisdiction. That's for the Department of Revenue to decide. We're not here on a tax case. We're here on an anti-fraud case. Are you relying on the position of the amicas that we don't have jurisdiction or that the Fair Act Court didn't have jurisdiction under the False Claims Act to address this case? We are not relying on that point, Your Honor. But it's important to keep in mind that it's the False Claims Act that determines whether there should be liability here. It's a different question than the question under the tax statute. Absolutely. Because this is a False Claims Act case, the court should reverse the judgment of liability against Relax the Back for three reasons. First, there's no false statement as required under the False Claims Act. Second, Relator failed to prove Santer, failed to prove that there was a knowingly false statement made here. Third, Relax the Back was not even obligated to collect the use tax because it lacks sufficient nexus with the State of Illinois. In the interest of time, I'm going to focus on the first two of those points, but I'm happy to answer questions with respect to all three. Counsel, as far as the witness, McMillan? That's correct, Your Honor. Was he mistaken, or did he not have to see Santer? What do you think his testimony showed? So his testimony showed that when he joined Relax the Back in October of 2004, he began an investigation of whether Relax the Back had to collect Illinois use tax. Relax the Back is based in California, and it has Internet and catalog sales. And the question is whether Relax the Back is obligated under the law to collect this tax. So how do we know what a person has to do in their investigation? I mean, they can just call a lawyer from their home state and ask the question, or what's the responsibility of the person as far as looking into the tax liability? So I think that depends on the tax question at issue, and I think it depends on the custom and practice in the industry. One of the witnesses that we had testify was an expert. His name was Michael Scuduto. He was the former head of the Audit Bureau of the Department of Revenue, and he testified that Relax the Back's investigation was reasonable and consistent with industry custom and practice. The record is clear, is it not, that there was no further investigation at the point that the franchise agreement changed in 2006, I think that was, and the catalog sale requirement was imposed? Is that right? There was no further investigation done? That's a disputed point, and we would very strongly argue that the record is actually clear in the opposite direction. So to put that in context, the circuit court on motions for reconsideration suggests that there's no evidence that Relax the Back considered what I'm going to call the catalog distribution clause, which was added to the franchise agreements in mid-2005. To put that in context, it can actually be found in the relator's supplemental appendix at page 8. It is paragraph 2i, and it's a single sentence of a three-page amendment to about a 69-page document. That's what we're talking about. We're talking about the catalog clause. That's right. That's what the catalog clause is. That's what the circuit court suggested there was no evidence that Relax the Back considered. Now, that clause was added in a series of amendments to different franchise agreements. The first one is as executed on in June and July of 2005. The unrebutted testimony of Mr. McMillan, the CFO of Relax the Back, is that his initial investigation, which began on October 2004, continued through 12 to 14 months after he joined Relax the Back. So that takes you through October or December of 2005, after this amendment was executed. And that's just one point. The additional point is that the investigation was continuous. The CFO testified. Bob McMillan is the CFO of Relax the Back. He testified that he brought the use tax issue to the attention of the accountants every year through 2013, and every year there was no qualification. In addition, the record is undisputed that Relax the Back voluntarily began to collect tax in 2013 when circumstances changed and there was a permanent employee who is now working in Illinois. So it was something they continued to assess. Absolutely. And so we — It wasn't a one-off kind of investigation. That's a — It seemed to be the trial court's impression to some extent. To the extent that the court made that finding a fact, we contend that it's not just contrary to the manifest weight of the evidence, but it's contrary to all of the evidence. But you would also say it doesn't matter. We would say it doesn't matter for two additional reasons. First, the court's — on reconsideration, what the court looks at is an absence of evidence in the record. The court says, well, I don't see anything in the record that says that you considered paragraph 2i of this amendment. Now, by imposing liability on that theory, that shifts the burden from the relator to Relax the Back. So to the extent that there's some sort of a hole in the record with respect to this specific clause, that should be on the relator, not on us. Because reckless disregard would suggest you actually looked at it and said, ah, this says we should pay tax, but we're not going to, as I assume would. Well, reckless disregard is you see it and you say we're not going to look at it. You know it's there. You take some more affirmative act, I guess, to recklessly disregard something. That's a very fair point. And I think that's — there's certainly no evidence in the record that anyone asked anyone to disregard this or anyone purposefully disregarded this or anyone disregarded this, period. There's just an absence — the court finds an absence of specific testimony with respect to this. Another — Can I also ask a question? If the defendant conducts a good-faith investigation into what the tax liability is, does the case law say, for example, Ritz-Cameron, say that they have to show either an honest mistake or honest misrepresentation of the law or simple negligence? I mean, is it both or one? It's very clear under Ritz-Cameron and also under the court's recent decision in National Business Furniture that mere negligence is not sufficient to establish liability under the False Claims Act. So just to quote from the court, significantly more than an error, mistake, or ordinary negligence is required to demonstrate reckless disregard in the context of a False Claims Act violation. That's from National Business Furniture. I think it's paragraph 49. So certainly more than ordinary negligence. The court has found that reckless disregard is an extreme form of gross negligence. It sometimes states — it is best understood as an extension of what the purpose of this statute is, which is to combat fraud. Counsel, can I switch gears for a minute and talk about the attorney's fees? Sure. Hensley says the most critical factor is the degree of success obtained. Do you agree with that? That's correct. All right. So are there any other cases to construe, Henley, any different way? I mean, is that the main case in that area or is there something else that we should be aware of? So we think that's the principal case the court should look at. I think there are several cases that follow that rule. And I think there are two principles to consider. The first is the degree of success obtained, which was very small in this case. And second, whether these issues should be separable. So the way the court considered the merits of the case, it found that the vast majority of the liability did not exist because we did a reasonable investigation of all of the internet sales for all time. And so all of the internet sales and a lot of the catalog sales dropped out of the case because of that finding. Then the court said things changed and we didn't do this investigation. Now, we contest that. But if you assume that that's the case, then you're really looking at two very distinct claims. Otherwise, we should have prevailed with respect to both elements of this. So if you start with that assumption, it has to be that there are two claims here. And so at most, there should be attorneys' fees with respect to the claim on which the relator prevailed. Well, not to switch gears back again and to re-switch again, but I think in your brief you don't, and I'm going to ask your opponent the same question. I honestly don't understand how the trial court distinguished between catalog sales and internet sales. There's either a nexus or there's not, right? I mean, is there really a basis for distinguishing between internet sales and catalog sales? So as a matter of tax law, which now takes us further down into the rabbit hole, the case law is very unclear on this point. There's not a case that suggests that if you have some minimal nexus for one purpose, then all of a sudden you have nexus for everything. The only case that the relator talks about is this National Geographic case, which is a Supreme Court case on very different facts, where you're talking about a permanent sales office in a state, which is a lot of nexus. That's a lot of nexus. And there on those facts, the court finds, well, it doesn't matter as much what the relationship is between the sales and the nexus facts. But if you look at the other cases, for example, Town Crier, for example, Brown's Furniture, those cases only focus on the facts that relate to the sales at issue. You're talking about delivery trucks coming in and actually delivering the goods that are the subject of the tax. And the only Supreme Court in the Irwin case addresses this question of whether you have to have a connection. And the court finds in the Irwin case that you do have to have a connection. Now, the court in Irwin is addressing a slightly different tax that has to do with the tax, a use tax on an airplane. And so the out-of-state entity is the company that has the airplane. But it's the same principle of law. The idea is the Commerce Clause is protecting this out-of-state entity. And the court says, and the Irwin Supreme Court says in Irwin, and it's at 238 Bill 2D-332-341-342, the court says, no, you do have to have a connection. So when the circuit court rejects the analysis of the relator in this case about the connection of nexus, the circuit court is on very solid ground. And to the extent that the relator contests this, and it's important to also note that the appellate court in Irwin talks about this issue and actually cites to National Geographic for the proposition that the relator wants National Geographic to stand for. The Supreme Court corrects that in the Supreme Court's Irwin opinion. So we do contest that, although we're very far down the rabbit hole in terms of nexus. I mean, I thought from reading your brief that you, that both of you actually, neither of you actually supported the trial court making this distinction between one kind of sales and the other. But you're saying you do? I mean, you think he was wrong on the catalog sales, but you support the distinction? So it's two very different parts of the case. When we found there's no distinction in the record, it is with respect to the investigation. Right. There's nothing in the investigation. If you read through the trial. Okay, I get that. But you think as a mayor of Congress, Paul, you could make a distinction and say these sales, as to these sales there is sufficient nexus, but as to those sales there's not sufficient nexus. Yes, absolutely. And, in fact, that's what Brown's Furniture. You think, Doug? There's certainly nothing that, you know, Brown's Furniture is definitely fixated on. A certain kind of sales. A certain kind of sales and the activity related to those sales. Okay. Back to fees. Counsel, remind me. Was there a fee petition hearing? So there was not an evidentiary hearing on the fee petition. Okay. So no expert gave their testimony relative to the rate and if it's fair and blah, blah, blah. That's correct. And the court gave a blended rate? The court gave a, I believe it gave a blended rate. Did it give the reasons for it? It provided a brief discussion of its rationale for providing it. And also, what it did was it said, first, we're not going to divide the case into two pieces. The court said, number one, I reject that theory. Second, so I'm going to award all of the fees and then I'm going to look at the reasonableness of it. Here's a blended rate. Here's what I think is reasonable based on all of the fees and the work performed. All right, counsel. Any other questions you want to finish up, counsel? No, I'll finish up if you would, please. Sure. Let me address briefly the false statement requirement because I think this is something that is not focused on as much as it perhaps should be in the briefs. A false statement was a required element under the Illinois False Claims Act when this complaint was filed and at all relevant times. Witt's camera holds that the requirement can't be ignored. That's its response to Certified Question 2A. And Witt's camera also holds that these receipts and invoices that say tax equals zero on them are not, without something more, a false statement. They are a true statement. And at trial, the relator offered no additional evidence to establish that these statements, which were absolutely accurate and true and complete, were somehow misleading and false and deceived the government. And we think this is a dispositive issue with respect to all of the liability here. Now, the relator will argue that proving sanitor satisfies the false statement requirement. But that fails for two reasons. First, it reads the false statement requirement out of the statute, which is something that the court can't do, and it's contrary to Witt's camera. And second, it's based on the hypothetical possibility. The relators talk about the possibility that a literally true statement could be used as a ticket to knowingly defraud the government. That was a statement the circuit court made with respect to a motion to dismiss. And while there may have been a question of fact at that time, now at trial, we know that these documents were not used as a ticket to knowingly defraud the government. And the reason this issue is important is that the documents are complete. They state everything that an auditor would need to know to assess tax liability if the auditor concluded that tax liability needed to be assessed. There is nothing that could deceive an auditor here. And it is, in effect, no different than Relax the Back standing on a mountaintop proclaiming what they're doing. They are, in fact, disclosing that they're not collecting the tax. There's nothing that is false about those statements. So that's an additional reason for why there should be no liability here. If there's no further questions, I reserve the remainder of my time for rebuttal. Yes, counsel, fine. Thank you. Counsel, if you would please state your name again for the record. Good morning, Justices. Steve Diamond for the relator and the appellate here. So the court's finding that Relax the Back acted with reckless disregard here is supported by the evidence. What the evidence showed was that McMillan, the CFO, began work in October of 2004. He then talked to a lawyer. He talked to a certified public accountant. And in early 2005, he completed his investigation. And we know that because in the closing argument to the trial court, the Relax the Back said, our investigation was completed in 2004 and early 2005. And they furthermore relied on offers of proof that they had made during the trial, in which they said McMillan talked to a lawyer shortly after he came to work in October of 2004 and he completed that discussion in early 2005. And similarly, he talked to the accountant in 2004 and completed that investigation in early 2005. So let's assume it's a completely inadequate investigation. How is that reckless disregard? What is he recklessly disregarding? Because he knew that there was an issue whether they had to collect use tax in Illinois on these salesmen from out of state. He did an investigation. I get that. It's inadequate. Where's the reckless disregard? Okay. And then what happened was, as the trial court found, Relax the Back went on to change their method of business in several respects. First of all, they added this requirement about the catalogs, number one. Secondly, and I think this is equally important, Justices, is that in 2005, Relax the Back quintupled the number of franchisees that were already in Illinois. They went from one that had been established back in 1995, beginning in 2005, they sent their employees to Illinois for some more than 40 days. They opened four new franchises. And the benefit to Relax the Back of sending their employees to town was that they were now going to receive royalties of 4% to 5% from the sales. So they had a direct economic interest by sending these employees to open the franchisees and then the activities of the franchisees. Royalties which grew to like $200,000 a year by the year 2007. But they were getting a percentage of the franchise sales before 2000. It just increased the amount. Yes, but they also, that is correct, but they also sent people to Illinois to assist in opening these franchises for more than 40 days. And Brown's Furniture says that activities in Illinois, either by the vendors' employees or by others on behalf of the vendor, are established nexus. And so you have both problems here. Namely, you have the employees coming in to help establish these franchises. And then you have the additional revenue, royalty revenue, that's coming as a result of these economic activities of the franchisees. And indeed, when I asked Mr. McMillan at trial, he said that he admitted that Relax the Back benefited from the activities of the franchisees. So is that part of the analysis though? People told him there was no tax that was due? Well, but then things changed. That's the point, Your Honor. Things changed. They added the Relax, they added the catalog provision, they came to town, opened all these other things. And one other thing that's very important too, and this was in response to a question that Judge Barkowitz asked McMillan. He said, well, when did you read Brown's Furniture? Was that before or after you told the President that there was no duty to collect tax? And he says, I told him before I read Brown's Furniture. Then he reads Brown's Furniture later on and he sees and he admits that Brown's Furniture says nexus is triggered by the conduct of economic activities in Illinois, either by the vendors' employees or by others on that behalf. So suddenly he reads Brown's Furniture, nothing further. No further discussion with the lawyer, no further discussion with the accountant. And he now knows that they're benefiting from these franchisees' increased royalties. The franchisees are now sending out these catalogs. What do you think in Brown's Furniture he's recklessly disregarding? He's recklessly, well, first of all, by then you knew the Use Tax Act. The Use Tax Act had two provisions, agents and representatives, which the judges said. But you still have to meet the Commerce Clause requirement. Yes, and that's what Brown's Furniture said. Brown's Furniture set forth the Commerce Clause requirement and that was the conduct of economic activities in Illinois by the vendors' employees or by others on their behalf. And he acknowledged in his testimony. Yes, we sent these people to Illinois to set up these franchisees and he, it's a direct quote, he admitted that we laxed the back but benefited from the economic activities of the franchises. An absolute congruence with the language of Brown's Furniture. Brown's Furniture talks about physically sending representatives on a regular and frequent basis. Well, first of all, this is more than Brown's Furniture said because you now have five franchisees located in Illinois selling relaxed-to-back products six days a week. It's not occasional deliveries, it's a franchisee. And under both the agent and representative and the franchise provision, and Brown's Furniture, they're generating revenue for them. And see, furthermore, the town quite a place. There were just 30 deliveries over a couple of years. Well, here they spent 44 days in a couple of years opening the franchises. But I think the real distinction, Your Honor, is that they have four or five franchisees generating revenue for this defendant. That's a lot more than sending a truck in from time to time. I mean, that's what you say. Who knows what the Department of Revenue would say? That's what you say. You could look at it this way. You could look at it that way. Isn't the point that it's really complicated and hard to figure out and reckless disregard is a pretty high burden for you to prove? Well, it might be hard to figure out, except that when I asked McMillan at the trial, he said, yes, we satisfied the franchise provisions. We have franchisees in Illinois. That's a statute. Yes, that's a statute. That's not the Congress clause. Yes. Well, and then under the Congress clause, Your Honor, he admitted that they had people coming to Illinois for 40 days and they had these franchisees who were conducting, it's a direct quote, conducting economic activities on behalf of the vendor who likes the bank. So he knew it after he read the Brown's furniture opinion and after he had told McMillan we don't have any duty to collect tax. Counsel, do you know the connection in time between the Illinois Department of Revenue audit, the reading of Brown's furniture, and the new franchisees? Is this all happening? No. First of all, there was no Illinois Department of Revenue audit ever. That's plain in the record. There was no audit. Yes. That's a fundamental difference. There was never any audit in this case. Right. So is there a report of any kind, a review? Nothing. There's no internal analysis. Yes. Fine. Yes. Thank you. That's the critical factor. All right. You say it ends in 2004 and he says it went on. No, it ends according to their statement in the trial court and they're all for proof. Our investigation was in late 2004 and early 2005. They say it's time and time again. And that's why the circuit court said there was no further investigation because he relied on their statement, their admission. And, Your Honor, you would ask whether there's any difference between catalog sales and Internet sales. Right. There's no difference. I completely agree with you. There's either a nexus or there's not. There's a nexus or there isn't. But there's a lot of support for that. And the first reason is the U.S. Tax Act itself says there's a duty for an out-of-state vendor to collect a tax if it maintains a place of business in Illinois. Maintaining a place of business is there's two alternatives here, agent or representative or a franchisee. And the statute doesn't say anything about where you may have a duty depending upon the type of sales. There's just no suggestion about that. And similarly, the actual two provisions of the U.S. Tax Act that we rely on, the agent or representatives and the franchise provision, neither of them says, well, if the franchisee is helping you make catalog sales or something like that. If you meet the Congress call requirements, then the statute kicks in. That's it. And indeed, the catalogs that were introduced at trial and the print ads, the catalogs, every other page has a call center number where you could call to place a catalog there or the website. How do you even know what kind of sale it was? Yeah, well, we don't know. But clearly, we're both promoted. Also, in your cost appeal? Yes. Can you bring up some argument relative to constitutionality? What issue is that? Well, OK. After, at the end of McMillan's questioning, I said, well, you just admitted that what the test is under Brown's Fringe for indexes and you've admitted that the franchise provision is satisfied. So is there any basis that you didn't enforce or adhere to these? And he says, well, I think Quill declared these unconstitutional. Well, there was a little problem. There was a huge problem with that argument. Of course, Quill was decided in 1992. Our Supreme Court decided Brown's Furniture in 1996. And the precise issue in Brown's Furniture was, was the Use Tax Act constitutional? Because the trial court then declared it unconstitutional. And our Supreme Court said, it is constitutional. It's presumed constitutional. And we find it constitutional. So that issue argued before the trial court. Well, and that's another point you're making. It was never argued. They never, other than that one quote, they said, gee, I think Quill might have declared it unconstitutional. But there's no need in this case to declare any statute unconstitutional. They didn't even argue. Well, why should they? Because if they want to argue that the franchise provision or the agent's provision shouldn't apply in this case, then they'll have to. One offense is it's unconstitutional. And they never argue that in their pleadings or in their briefs. Aren't they just saying, like Brown's Furniture said, it's got to be applied in a constitutional way? And it can be. Yes, it can. It can be. Because under the Brown's Furniture test for substantial nexus, it's right on. It's spot on in this case. Counsel, how can your fees be justified under Hensley? Well, Your Honor, the circuit court dramatically cut our fees. And we think that they are related to the work. And the court found. Well, it's degree of success, is it not? Yes. And the court found that really because the argument really for the catalog sales and the Internet sales is the same, the proof is the same, that there was a common core of facts. And that was his principal reason for the fee rule that he gave. As I said, Your Honor, he did dramatically cut our fees already. And so. Kelsey, you want to finish up? Yes. So our request is, Your Honor, that the court sustain the trial court's finding that as to the catalog sales, there was reckless disregard here and that fact was there. And that the matter be remanded to the trial court to apply both the agent and representative provision and the franchise provision to determine, to apply to the Internet sales. Because they lie together, Your Honor. Counsel, thank you. Thanks very much. Final word? And before you get going, I'm sorry, I did have one more question. Oh, I apologize. No, no, no. For him. It's actually for you. Oh, sorry. But I've actually had it since he said that before. How is it, I'm just curious, how did trial court whip down, as you say, the rabbit hole? How did it get so focused on whether there was or wasn't tax liability? I'm just more curious than anything else. Do you know the answer to that? Well, Your Honor, the truth is that only the circuit court would really know the answer to that. My view would be that the circuit court began to confuse this case with a tax case. And it's stated in its closing arguments, in closing arguments, it's stated in response to a back and forth that under its view over its camera, a flawed investigation was not sufficient to absolve circuit liability here. Instead, if the court found that the investigation was flawed, then there still could be liability if the court disagreed in hindsight. And it was flawed because the right answer, he believed, was that that tax was due at least on the Cadillac suit. That's our reading of the record. Okay. All right. Just very briefly, with respect to the cross appeal, the most important point on the cross appeal is that the relator does not challenge the circuit court's factual finding that relapsed the back conducted a good faith investigation sufficient to absolve itself of false claims that liability with respect to all of the Internet sales. Putting aside the issues of Nexus, which are difficult because inherently what's happening is you have these broad propositions of law that have to be then applied to very disparate facts. You know, how many delivery trucks does one visit from someone to a franchise equal? That's the sort of question that people are talking about. Does it make any difference there was no Illinois Department of Revenue on it? So our view on that is that it makes a big difference, and the reason is that the Department of Revenue has never assessed liability of any kind with respect to relapsed the back. The state knew about this case from the beginning, has been involved in it. Not in a, the relator has taken the lead, but the state has monitored it and followed it throughout the time. We have zero word from the state as to whether or not it would find liability here just on the Nexus issue. So we don't know. And no one told relapsed the back that they did have that. Relapsed the back is able to go to the Department, are they not, and ask for an opinion letter on liability? So there's a procedure that is discretionary on the part of the Department of Revenue whether they take that up or not. So that is certainly one avenue of investigation that's open. It's discretionary. Discretionary with the Department, whether they'll do it or not. That's right. But there's no lending record that suggests you ask them to do it. We did not ask them to do that. So, but putting aside the Nexus issues, with respect to the investigation, that factual finding that we did a good faith investigation, and the court was very clear about this on the record, multiple times, that we did a good faith investigation, absolutely precludes False Claims Act liability for the Internet sales. And then very briefly with respect to the points that were made by opposing counsel, another error of law that we didn't have a chance to talk about before with respect to Santer, and the circuit court's ruling on that, is that what the circuit court did and what the relator is now trying to argue for is to conflate a fraud investigation with no investigation at all. You can always take any real-world investigation, a couple of things, out of that where there's no documentation, that there was investigation on, separate those out and declare that there was no investigation done. But there is no dispute that any investigation was done here. At best, at most, the record might support that there were flaws in that investigation. So maybe something wasn't looked at that should have been looked at. But it definitely happened, it was definitely in good faith, and it definitely continued through the time period here. The relator wants to argue that recklessness occurs here in the absence of investigation. The court asked opposing counsel, where is the reckless disregard? The only real answer the relator has is the complete absence of investigation, the idea that we were just asleep at the switch with respect to this issue. In fairness, what they're saying is things changed significantly and you didn't investigate those changes. And that's reckless disregard, they said. That may be their argument. We disagree with them on the facts and on the law on that point. Counsel, can you comment on the aha moment that should have occurred after reading Brown's furniture? So this is the first time I've heard that timeline laid out in an argument. And so I don't believe that that is supported by the record, this idea that McMillan read this and then stopped looking at anything. First, he never stopped looking at anything. Second, my understanding of the record is that Brown's furniture was something that was raised at the very outset of the investigation by Attorney Jeffrey Ward. And if not, it had to be raised during the investigation. It was raised by the people who they were consulting with. And so that timeline, I don't believe, is supported by the record. All right. So in conclusion, Your Honor, the Relax the Back is now facing an anti-fraud judgment of $130,000 approximately, which is mostly the erroneous award of attorney's fees over a matter of about $5,000 in uncollected tax, despite that Relax the Back never made a false statement, despite that it conducted a good-faith investigation, and despite that it's uncertain whether or not it was even obligated to collect this tax. Relax the Back did not defraud the state by determining its obligations under uncertain law after a good-faith investigation. And it should not be penalized under an anti-fraud statute because a private law firm disagrees with its determination. For all the reasons discussed today and for all the reasons discussed in Relax the Back's briefing and the Amica brief, we ask that the Court reverse the judgment of liability under the False Claims Act and affirm the judgment of no liability with respect to the Internet sales. Thank you, Your Honors. Well, I should congratulate all of you for making a tax matter pretty interesting. Thank you very much for your presentation here today, and you will be hearing from us gentlemen and ladies. Thank you. Thank you, Your Honor.